We'll begin with oral argument on behalf of the appellant, Ms. Gambino. Thank you, Your Honors. May it please the Court. Good morning, Judge Brennan, Judge Scudder, and Judge Jackson-Ockey. Good morning. We are here today because Gary Howard did not receive a fair trial. There was insufficient evidence to support the convictions for crimes which Mr. Howard did not agree or intend to commit and crimes that were improperly joined for trial. Evidence obtained from an illegal and warrantless search of his home was introduced against him and his right to put on a defense was hobbled by allowing Agent Sabini to assert a Fifth Amendment privilege for which there was no publicly articulated basis. Like this court found in United States v. Sanchez, there was an avalanche of errors in this case. There were specifically seven, of which I will focus on three. First, the District Court erred in applying the inevitable discovery doctrine to save an illegal search of Mr. Howard's home and telephones. Second, the District Court erred in disabling Mr. Howard's public authority defense. And third, there was insufficient evidence at trial to support the conspiracy convictions on Counts 1 and 3 or the attempt conviction in Count 2. With respect to the warrantless search, of course, a warrantless search is presumed to be unreasonable, particularly when it's the warrantless search of a person's home. And the court incorrectly applied the inevitable discovery doctrine to try and save that illegal search. Now, Nix v. Williams is certainly very different in character than the case that we have here. In Nix v. Williams, the search was already underway, and it was not a warrantless or illegal search at the time that the defendant confessed, and they relied on the confession. Furthermore, in Coolidge v. Hampshire, the Supreme Court said that you can't use inevitable discovery to circumvent the warrant requirement, which is precisely what happened here. There was no independent search or parallel search ongoing. There was no prior knowledge about Mr. Howard, about what he was doing, about any dealings going on with the home that was to be searched. None of that was prior or parallel. There simply just wasn't a reason to have a search already in process. The argument that they could have obtained a warrant has also been rejected. It's been rejected in the Ninth Circuit. It's been rejected in this circuit by Cornelia v. Strom. And because you can't use inevitable discovery for a home search, absent exigent circumstances, which didn't exist in this case, because at the time the home was searched or the home was entered illegally and searched, Mr. Howard was already under arrest and was in the process of being taken into custody. If the government was communicating with the agents as they asserted and they could have got a warrant, the question is, why didn't they get a warrant? And the application of the inevitable discovery doctrine in this case simply eliminates the need for a warrant requirement, because any time someone claims they have probable cause and they could have got a warrant, they can save a warrantless search by saying, well, we could have done. The point is, they didn't do. And if they could have done, why didn't they? So simply applying the inevitable discovery doctrine in this case would eviscerate the protection against illegal searches of a person's home. Can you address the prejudice side of that? So let's just assume you're right. The government makes the point that even if you're right about that, any error was harmless given the other evidence in the case. What's your response to that? Well, the response to that, Your Honor, goes to the argument with respect to the sufficiency of the evidence. I believe that the government's position is incorrect, because there were charged conspiracies and a charged attempt, and you needed to be able to show some kind of intent with respect to Mr. Howard when the tape clearly demonstrated that there wasn't any. He had set a precondition which was never met, and the precondition for any deal happening was that he wanted to see the product, and that never happened. So they were never able to agree on price, on quantity, on where the drugs would be delivered or anything else. So in order to make up for that deficiency, the government took the items that were found in his home, a firearm which didn't belong to him, a quantity of money which was also accounted for by other means, a catalog or an instruction manual for a money counter, and suggested that since drug dealers typically possess these kinds of items, you should use that evidence to buttress the lack of evidence of intent on the ground, so to speak. So without that evidence, I think it would have been virtually impossible for anyone to credibly believe that a transaction was attempted or that there was any kind of conspiracy. Well, I think my sense is the government is going to say there's one piece, there's a piece of evidence that was important to them that was admitted at trial, and that was that Mr. Howard showed up at the meeting in July of 2018 with $133,000 of cash. And it looks like it's before the arrest. So you'd say, what are you showing up at a meeting like that with that kind of money for if you didn't have it in mind to buy drugs? Well, that's an interesting question. It supports Mr. Howard's defense. That money wasn't sufficient to buy 5 kilograms of cocaine, let alone 10 kilograms of cocaine. But didn't the defendant make statements that, well, I'm just going half now, I'll pay half later? If he agreed to buy it all, which was premised on his request to see the product and to test the product, which never occurred. So this is more like the Seventh Circuit cases in which you have a negotiation going on, but it's never completed. And you don't have the critical agreement, which is required for a conspiracy. There has to be a meeting of the minds. There has to be an actual agreement. There never was here. So without the meeting of the minds, you don't have a conspiracy. And the money, the government argues, is used to justify the attempt. However, that's not a substantial attempt. You can't go to a car dealership with some of the money that you want to buy the car. Nobody will let the car go to you without the complete price having been agreed on. So there is no attempt without all of the necessary requirements being in place. Even in this court's decision in United States v. John, for instance, the government cites that in support of their position. However, it's very dissimilar because in that case the purchaser, in this case Mr. Howard, the potential purchaser, had both tested the cocaine, knew what the quantity was. They had the right amount of money. They designated a location. None of those things were at play in this particular case. Ms. Gambino, I'd like to focus you in on the fourth argument, which is the conflict between the Fifth and the Sixth Amendments, specifically with regard to Sabani. Yes. The district court here considered the circumstance in camera and made a determination. We're reviewing that under an abusive discretion standard. What was an abusive discretion about the way the judge handled that conflict of two constitutional rights, both of which are criminal defendants? Obviously Sabani's appellate decision came down last year. Now we're here on this one. How did he mishandle that, do you think? I believe he mishandled that, first of all, because he didn't justify Mr. Sabini's claim of his assertion of privilege. We challenged that. And we challenged his assertion of privilege because, first of all, the conduct at issue in Mr. Howard's trial, the statute of limitations had run by the time we got to trial. So there wouldn't be any fear of additional prosecution based on anything that he would testify to with regard to the conduct in Mr. Howard's trial. He was convicted of financial monetary issues separate and apart from, although they touched on Mr. Howard, they were separate and relied on many other things other than what was at issue in Mr. Howard's case. So under this court's case law, you have to have a reason for asserting a reasonable belief that you're going to expose yourself to prejudice. And in this case, there was no reasonable belief articulated. We don't know what happened in that ex parte conference. Neither of the parties do. And so we weren't able to challenge what he said. We stated all of our beliefs why we didn't think that he had a reasonable claim of Fifth Amendment privilege with respect to testifying in Mr. Howard's case with regard to Mr. Howard's conduct. Don't we have to trust the district judges on that? We ask district judges to do in-camera reviews all the time. I'm struggling with how you think the procedure was wrong, abuse of the discretion, because the district judge here considered the arguments, and he was between a rock and a hard place. Both individuals have Fifth Amendment rights and Sixth Amendment rights. He's got to make sure one doesn't get sacrificed for the other, and this was his solution. Are you saying it's an insufficient quantum of evidence to get across the threshold for that type of action? That's our position, Judge, especially when you're balancing two critical rights, like the Fifth Amendment and the Sixth Amendment. In this case, to the extent that Mr. Sabini didn't have a reasonable belief that he would be prosecuted based on what we would be asking him to testify to, Mr. Howard's Sixth Amendment rights should have taken precedence. If it were true that the statute of limitations had not run and there was still a real danger that Mr. Sabini could be prosecuted for the conduct in Mr. Howard's case, we'd be in a very different ballgame. But given the particular circumstances of this case, we believe that it was not properly handled and the decision was not properly made. Would you like to reserve the remainder of your time? Yes, thank you. Thank you, Ms. Gambino. We'll now move to argument on behalf of the appellee. Is it Mr. Shee? Shee. Shee. Thank you, Mr. Shee. May it please the Court. Jonathan Shee for the United States. I'd like to start with the Fifth and Sixth Amendment issue first, if that pleases the Court. A defendant's right to subpoena witnesses yields in the face of a valid Fifth Amendment claim and invocation by the witness himself against self-incrimination. In this case, as this Court has recognized, the District Court conducted an in-camera examination of former agent Sabini, during which he invoked his right not to testify based on a fear that he would incriminate himself. Obviously, neither party was present during that, so neither party here knows what exactly was said. But there are ample reasons to believe that Mr. Sabini had a valid basis to invoke his Fifth Amendment right. First, Mr. Sabini's case was still on appeal at the time that this examination happened and that the trial happened in Mr. Howard's case. And as the cases cited in our brief indicated, until a person's conviction is final, meaning that the appeal process had run out, that person still retains the Fifth Amendment right against self-incrimination. It was certainly possible that Mr. Sabini's case could have been reversed on appeal or amended for a new trial, and then his testimony at Mr. Howard's trial potentially could have incriminated him in that second retrial. Second, Mr. Sabini had a valid basis to fear that truthful testimony at Mr. Howard's trial would have revealed that he perjured himself at his own trial. And as the district court recognized here, Mr. Sabini testified, the jury convicted him on everything, and then the district judge in the Sabini case applied an obstruction enhancement for perjury. So it was certainly conceivable that if not his direct testimony, certainly cross-examination would reveal his prior perjury. In addition, the district court recognized that there was risk that Mr. Sabini would incriminate himself with respect to a post-trial issue where Mr. Sabini, through jail calls, attempted to work out a testimony for affidavit deal with the defendant, in this case, Mr. Howard. Essentially, during jail calls, Mr. Sabini told his wife that if Mr. Howard provided an affidavit for Mr. Sabini in connection with Sabini's sentencing, that Sabini would testify on Mr. Howard's behalf. That was a subject of a pretrial motion, a motion in limine, where we requested the ability to cross-examine Mr. Sabini about that particular issue. It certainly would have been relevant because it would have been relevant to his bias, his testimony at Mr. Howard's trial. And the district court was correct in determining that that certainly was a potential issue for him in terms of his obstructive conduct. In addition, this court has held that there is no Sixth Amendment right to subpoena a witness when that witness's testimony would not have been relevant and material for the defense. In this case, Mr. Sabini testified at his own trial. He testified in the suppression hearing that the 2018 transaction was not authorized by him. And the district court also noted after the in-camera examination that the court did not believe that Mr. Sabini's testimony would be helpful for the defense. In the reply brief, the defense has argued that, well, there was an unorthodox dealing between Mr. Sabini and Mr. Howard, which would have been relevant at trial, but that's not sufficient to establish public authority. To establish public authority, the defense would have had to establish that there was, in fact, authorization given by Mr. Sabini, which did not happen. Is it as clear as that, though? I mean, this could read like a transcript for a TV show. The bad cop, the double-dealing C.S. You've got all sorts of backs and forths here. I wonder if it's as clear as you've argued that there would be no relationship between the Sabini prosecution and the Howard prosecution. No, I don't think that that's our position. There is a relationship between both cases, which is why there was a significant risk that his testimony in the Howard trial would potentially have impacted a subsequent retrial had his case been reversed. Our position is just that on the specific issue in this case, at the Howard trial, the question was whether Mr. Sabini authorized the particular conduct that the defendant committed. In this case, the 2018 drug transaction. Mr. Sabini testified twice that he did not. He testified on cross-examination at his trial, and he testified at the suppression hearing that he did not provide an authorization. That's a required element for the defense to establish the affirmative defense of public authority. Without that, Mr. Sabini's testimony, regardless of their dealing, which we would agree was unorthodox given that they were involved in a corrupt relationship, is not sufficient to meet that defense. It is not relevant or material for the purposes of this case. Speaking of that corrupt relationship, what are we to make of the fact that Agent Hom testified on the stand that there was an agreement among the DEI and HSI and Howard not to prosecute Mr. Howard for the 2017 transactions, and that agreement did appear to be honored right up until the moment that Mr. Howard is successful on his motion to suppress or partially successful? What are we to make of that? Your Honor, so I don't think that it's a correct characterization to say that there was an agreement between HSI and DEI not to prosecute Mr. Howard. I think Agent Hom testified on cross-examination here that there was discussions between himself and Mr. Sabini about Mr. Howard potentially working off the charge, meaning cooperating with DEI for leniency in connection with the 2017 transaction. But Agent Hom also testified that there was no cooperation ultimately with DEA and essentially that everyone forgot about it and there were no charges brought ultimately. I would also note that the DEA agents or TFOs on the scene there are not authorized to provide immunity for this particular transaction, and no party raised any issues with respect to the ability to prosecute Mr. Howard for that 2017 transaction. TFO? Task force officer. Thank you. Mr. Sheehy, the district court's conclusion in its order on May 6, 2024, after conducting this hearing on the public authority defense, concluded that Mr. Howard's not presented enough evidence for the defense to go forward at trial. At the trial, there are some references in the materials here that, in fact, Mr. Howard was able to assert some aspect of a public authority defense. What happened? Can you just tell us what occurred? Yes, Your Honor. So there was pretrial litigation with respect to the public authority defense. Initially, we moved to exclude the defense entirely. The district court issued an order that the defendant had not presented sufficient evidence, but that he potentially could present sufficient evidence if there were more evidence presented at trial, in which case public authority would be potentially raised. At that point, the government, we essentially switched our position. We no longer asked to exclude the defense, and we agreed that, and we, in fact, fronted it. At trial you did? Yes, Your Honor. Okay. The district court order said that the district court would revisit it if the defendant elected to testify at trial. I'm sure Howard didn't testify at trial, did he? He did. Okay. All right. So that's how it, and did you know that going in? Is that why you fronted that? We didn't know that he was going to testify, but we knew that the public authority defense was likely to be raised and that there was likely to be sufficient evidence to get past it. And was the jury instructed on it? Yes. We opened on it. I think that, and we put in our case in chief all of the testimony from various supervisory agents at HSI to rebut the public authority defense, and the defendant testified, and the jury was instructed on it, and the entire argument, essentially, was regarding public authority during the closing arguments as well. With respect to the inevitable discovery issue, the district court here correctly concluded that the DEA would have inevitably obtained a search warrant for both the residence and the phone had the defendant not provided consent. And we would point to Agent Roediger's testimony at the suppression hearing that he certainly had the intention to apply for search warrants and that he was in contact with an AUSA at the time to discuss the possibility of preparing those warrants and actually had the DEA had conducted a security sweep of the residence in anticipation of obtaining that search warrant. Can you address Mr. Howard's argument that this line of argument or defense could really swallow the rule and the government could end up always relying on inevitable discovery and totally evade the warrant requirement? Yes, and I think that this case presents a reason why the inevitable discovery doctrine exists. Essentially, the sequence of facts was that the DEA was preparing to obtain search warrants. They were on the precipice of doing so, and then the defendant provided consent. At the suppression hearing, there was competing testimony between the government's witnesses and then-Agent Sabini, who testified for the defense, that he essentially had made certain commitments or promises to Mr. Howard during conversations that he had with Mr. Howard, and the district court concluded that those promises rendered the consent invalid. But there was every reason for the agents on the ground at the time of this incident to believe that that consent would be valid and therefore did not obtain the search warrants. Also note that at the time of the suppression hearing, when Agent Sabini testified, he was not yet under indictment. And then after that, he was later convicted of lying, including lying in connection with Mr. Howard. But we did not rely on the consent because of the messiness, essentially, of that situation. But this court's precedents recognize that in situations where there would have been otherwise a legal basis to obtain the evidence, suppression is not warranted. And in this case, in additional, I would say that there is a harmless error argument as well, that with respect to the phone, almost everything that was in Mr. Howard's phone was also on Mr. George's phone, who was the cooperator, and both sets of text messages were introduced as evidence. The only difference was that Mr. Howard's phone had some additional messages regarding scheduling, and I think there was one word, the word car, in one of the text messages. With respect to, you know, but also the evidence in this case was overwhelming. Both transactions, the 2017 and the 2018 transactions, were on tape, and the defendant was visible on those tape recordings, and his voice was also audible when he's discussing these transactions, when he's going through with both of those transactions. And so even if the district court erred in admitting that evidence, that error was harmless. So what is your answer to my question? Is it what's stopping the government in every case from just putting an agent on the stand that says, we were going to get a warrant, or we could have gotten a warrant, we were planning to get a warrant? What distinguishes this case from that? You're just saying we have slightly more evidence here that that would have been true, not just the agent's word for it? That's correct, Judge. There is more evidence, given that the agents were in the process of obtaining it. They testified that they communicated with an AUSA. They testified that they had conducted a security sweep at the residence. And the district court recognized that this would have been part of the normal procedure to obtain search warrants for the defendant's residence, as well as his phone, in this type of situation. And I think that's believable, given the context of the consent and those issues that arose subsequent to the search. But on the ground at the time, the agents had every reason to believe that those consents that were given by the defendant would have been valid and that this evidence would have been missable. Okay, thank you. Mr. Sheehy, can I take you back to the public authority issue for a second? There's a portion of the defense brief, it's page 31, you can look at it later, where the defendant is saying, Agent Sabini testified at a suppression hearing, and at the suppression hearing, he testified that Howard had told him that there were individuals that were dealing out of a furniture store, point one. And then point two, that Sabini directed him, him Howard, to, quote, get yourself into a position where we could do a buy or bust. You know what I'm talking about? Yes, Your Honor. Okay. So, is that an accurate recounting of what the testimony is? And if so, why doesn't that statement go pretty far toward a public authority defense? Well, because the public authority defense requires a specific authorization of the actual charged conduct. So, at most… Go do a cocaine buy and bust. Let me know when you're ready. We'll bust him. So, I don't believe that that's what Agent Sabini was authorizing, and he was asked specifically by the AUSA on cross-examination, did you authorize the defendant, Mr. Howard… In the same hearing? Yes, in the same hearing. It was in the… It's a little… I mean, it's telling him to do something, telling him to get yourself into a position where we could do a buy and bust. So, that's telling Howard, go out there and do what you do, and get yourself in a spot where we can take some dealing down. I think, at best, he is authorizing Mr. Howard to collect intelligence regarding the individual at the furniture store. He is not authorizing Mr. Howard to purchase 10 kilos of cocaine from that individual. Okay. When the public authority defense was allowed to go forward at trial, was the defendant able to make arguments about what I was just describing? Yes, Your Honor. Thank you. And unless there's any questions. Thank you, Mr. Sheehan. Thank you. Ms. Gambino, we'll go now back to you for rebuttal argument. First of all, I want to go back briefly to Judge Jackson-Akiwumi's question to the government. It was, first of all, with respect to the phones, the Riley case takes care of phones. There's no exception to the warrant requirement with phones, with the possible exception of fear of destruction of evidence, which wasn't at issue in this case. So they really had no reason not to get their warrant for Riley, whether he consented or he didn't consent. And the very issue of consent was further complicated by not only did Agent Sabini talk to Mr. Howard when he was arrested, but the agent talked to the DE agent who arrested him. So it was a conversation between the two agents, following which Mr. Howard was told, do what they're telling you to do and it's going to be okay. I'm paraphrasing, but the specifics are in the record. So that the judge was right in finding that this was coercive, and the agents had reason to know also that this was coercive and was subject to challenge. So they should not have simply stopped their procedure to get a warrant based on what was going on in this transaction because promises were made and not kept. And similarly with the Mr. Han, TFO Han's testimony, that there was an agreement between the DEA and the HSI with regard to what Mr. Howard, how Mr. Howard was going to be treated based on the 2017 incident. They agreed not to tell the prosecutors to go forward with prosecuting this particular event until after the suppression hearing. And TFO Han said, well, nobody ever followed up. Well, he didn't follow up and the other agent didn't follow up, so that's a matter between agents. And they still told Mr. Howard that he wasn't going to be prosecuted. So whether they did or didn't follow up with their agreement about him, that agreement stood and shouldn't have been breached for the sake of adding more unrelated conduct to this particular trial. Also, with regard to authorization, the truthful testimony of Agent Sabini would have been similar to what he started to testify to at the suppression hearing and was cut off because at that time he was an agent and they were claiming he was going into sources and methods. But we expected and told the court that if Mr. Sabini was called to testify, he would talk about the relationship that he and Mr. Howard had in which he repeatedly had Mr. Howard investigate for him and see if somebody could buy or sell drugs before they would go ahead and get the actual authorization. So we're talking about actual authority versus apparent authority. While it may have been true that he didn't say, on this date you go do this and I'm going to bring all my guys with me, from Mr. Howard's point of view he was authorized to make these explorations and then later the setup action would occur. So it's much broader than simply what happened at trial and the reason why Agent Sabini's testimony was so critical was that all of his higher-ups said there was no official authorization, which is true, there wasn't. But there was authorization based on the relationship as it was conducted by Agent Sabini and as it was understood by Mr. Howard. I see my time is up. We ask you to reverse the convictions in this case. Thank you, Ms. Gambino. Thank you, Mr. Shee. The case will be taken under advisement.